UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No._____

WOOF GANG BAKERY, INC.,

      Plaintiff,

v.

MVHF ENTERPRISES, INC. and
MARJOLIJN VAN HOORN FAJARDO,

      Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff Woof Gang Bakery, Inc. ("Woof Gang") for its Verified Complaint against Defendants MVHF Enterprises, Inc ("MVHF") and Marjolijn van Hoorn Fajardo ("Marjo van Hoorn") (all collectively "Defendants" unless otherwise indicated) states and declares as follows:

## JURISDICTION AND VENUE

1. This is an action for breach of contract, trademark infringement, unfair competition and unfair deceptive trade practices under the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. § 1051, et seq.) and misappropriation of goodwill arising out of Defendants' operations and use of Woof Gang's® federally registered trademarks in connection with their businesses in Miami and Surfside, Florida.

2. Jurisdiction is based on the federal trademark laws of the United States, 15 U.S.C. §§ 1051 – 1127, and 28 U.S.C. §§ 1331 and 1338 relating to pendent jurisdiction.

3. Venue is predicated on 28 U.S.C. § 1391(b). A substantial part of the events and omissions giving rise to Woof Gang's claims occurred in this District, Defendants reside in this District and the Parties contractually agreed that this District would be a proper forum for

resolving their disputes.

**PARTIES**

4.      Woof Gang has developed methods for establishing, operating and promoting a unique retail store selling dog treats, pet food, pet accessories and pet grooming services under "Woof Gang Bakery®" and related logos and Marks and Franchisor's proprietary system for doing business (the "Business System").  Woof Gang owns the "Woof Gang Bakery®" service mark as well as other service marks, trade names and related marks (hereinafter the "Marks") and operational techniques, service concepts and proprietary information owned and identified with Woof Gang.

5.      Woof Gang provides its unique services to the general public through authorized franchisees.

6.      Woof Gang is a Florida corporation with its principal place of business in Orlando, Florida.

7.      MVHF is a Florida corporation with its principal place of business at 2627 S. Bayshore Drive, Unit 607, Miami, FL 33133.  Marjo van Hoorn is the sole owner, officer and director of MVHF.

8.      Marjolijn van Hoorn Fajardo is an individual citizen and resident of the State of Florida residing at 2627 S. Bayshore Drive, Unit 607, Miami, FL 33133.

**THE FRANCHISE AGREEMENTS**

9.       On or about January 18, 2022, Woof Gang entered into a Woof Gang Bakery® Franchise Agreement with Marjo van Hoorn in her individual capacity to open and operate a Woof Gang Bakery® franchise business at 3301 NE. 1st Ave #104-E, Miami, Florida (the "Midtown Franchise Agreement").  A true and correct copy of the Midtown Franchise

Agreement is attached hereto as Exhibit A.

10.     On July 11, 2023, Woof Gang entered into a Woof Gang Bakery® Franchise Agreement with Marjo van Hoorn's wholly-owned corporation, MVHF, to open and operate a second Woof Gang Bakery® franchise business at 9531 Harding Ave., Surfside, FL (the "Surfside Franchise Agreement"). Marjo van Hoorn signed a Personal Guaranty and Assumption Agreement in connection with the Surfside Franchise Agreement in which she agreed to be personally bound by each and every agreement, covenant and provision in the Franchise Agreement.  A true and correct copy of the Surfside Franchise Agreement is attached hereto as Exhibit B.

11.     Pursuant to the terms of the Franchise Agreements, Marjo van Hoorn and her corporation were granted a nonexclusive right and license to operate a Woof Gang Bakery® franchise business using Woof Gang's® Marks and Business System at the addresses specified above.

**THE MARKS**

12.     Pursuant to the terms of the Franchise Agreement, Defendants were authorized to operate their franchise business using the federally registered Mark "Woof Gang Bakery®" as well as other service marks, trade names, logos, insignias, designs and other commercial symbols owned by and associated with Woof Gang, including:

3

| Principal Trademarks | U.S. Registration or Serial No. | Application or Registration Date | Principal/ Supplemental Register |
|---|---|---|---|
| WꙨꙨF GANG BAKERY | 5,895,154 | October 29, 2019 | Principal |
| WOOF GANG | 4,326,698 | April 30, 2013 | Principal |
| WOOF GANG GROOMING | 6,300,905 | March 23, 2021 | Principal |
| WOOF GANG BAKERY | App. No.: 97727681 | App. Date: December 21, 2022 | Principal * |
| WOOF GANG BAKERY & GROOMING | App. No: 97727784 | App. Date: December 21, 2022 | Principal * |
| WꙨꙨF GANG BAKERY & GROOMING | App. No.: 97750073 (ITU) 97750071 (1A) | App. Date: January 11, 2023 | Principal * |
| WꙨꙨF GANG BAKERY & GROOMING | App. No.: 97769677 | App. Date: January 26, 2023 | Principal * |

13.     Woof Gang has marked the goods and services provided under its Marks with appropriate notice indicating that the Marks are registered in the United States Patent and Trademark Office.

14.     Woof Gang granted Defendants the right to use the Marks in connection with the operation of their two Woof Gang Bakery® franchise businesses pursuant to the terms of the Franchise Agreements.  Defendants were not, however, authorized to use the Woof Gang Bakery® Marks on, or in connection with, the sale or promotion of any product or service not specifically authorized by the Franchise Agreements, or after expiration or termination of the Franchise Agreements.

**INCIDENTS LEADING TO TERMINATION OF THE FRANCHISE AGREEMENTS**

15.     After execution of the Franchise Agreements, Defendants operated their Woof Gang Bakery® businesses using the Marks and Business System provided by Woof Gang and

accepted the benefits produced by those rights and assets.

16.     On November 30, 2023, a client of the Midtown store posted on social media a video of a dog being mistreated by one of the groomers at Marjo van Hoorn 's Midtown location. The video shows many failures to follow Woof Gang's procedures and operational standards. The video went viral and garnered over 175,000 views on Instagram alone. While the Woof Gang social media policy requires that this type of activity be reported to Woof Gang, Marjo van Hoorn failed to advise Woof Gang of the incident or the viral video.

17.     Woof Gang learned of the incident and viral video on December 1, 2023 when other Woof Gang Bakery® franchisees brought it to Woof Gang's attention. Woof Gang contacted Marjo van Hoorn and she told Woof Gang that she was aware of the incident and video and was addressing it, which Woof Gang believed would be in accordance with Woof Gang Customer Service standards.  Woof Gang later found that Marjo van Hoorn failed to call the customer herself, but instead a manager called the customer and told the customer that there was nothing wrong with the procedure observed in the video. According to the customer, the manager did not apologize, but instead asked how much money the customer wanted to take the video down from social media.

18.     Instead of calling the customer, Marjo van Hoorn sent the customer a text on December 2, 2003, which the customer then posted on her Instagram with other frequent updates to her "story" on Instagram, which added to the number of page views and additional damage to Woof Gang's reputation and the reputation of other Woof Gang Bakery® franchisees.

19.     The customer also received screen shots of messages from Marjo van Hoorn to other individuals "explaining her side" of the story, telling people that the video was fabricated, that the groomer in question lost her job and indicating that Woof Gang Corporate (the

Franchisor) was going to take legal action against the customer-- which was patently untrue. The customer then posted these messages from Marjo van Hoorn on her Instagram story and tagged four other Woof Gang Bakery® locations in the Miami area in an effort to make the story more public thereby negatively impacting their public perception. This resulted in many negative Google reviews on Woof Gang's social media and accusations of animal neglect/mistreatment.

20. By letter dated December 4, 2023, Woof Gang provided Marjo van Hoorn with a Noncompliance Warning Letter regarding the manner in which Marjo van Hoorn handled the customer incident at her Midtown franchise location alleging mistreatment of a dog during the grooming session. By this time, the video and the customer's "story" of the incident was viewed by approximately 200,000 individuals, thereby causing severe social media backlash and damage to the goodwill associated with the Woof Gang Bakery® Marks, name and Business System.

21. The Warning Letter stated that Marjo van Hoorn failed to follow specific standards set forth in Woof Gang's Operations Manual with respect to social media policies, training her employees on Woof Gang grooming, safety, and customer care standards, acting as an independent contractor, and failing to follow Woof Gang's policy and instructions regarding engaging in a public argument with a customer. A true and correct copy of the December 4, 2023 Warning Letter is attached hereto as Exhibit C.

22. Although Woof Gang had the right to terminate the Midtown Franchise Agreement based on the damage to Woof Gang's goodwill from Marjo van Horn's actions and conduct, Woof Gang allowed her to continue operating at the Midtown store as long as she took three (3) corrective measures: 1) comply with Woof Gang's requirements respecting additional employee training to ensure compliance with Woof Gang's grooming and customer service standards with emphasis on topics relating to health and safety of pets; 2) comply with Woof

6

Gang's social media policies and cease any further communication with the disgruntled customer online or otherwise discuss the matter on social media which would likely lead to further damaging social media posts; and (3) comply with Woof Gang's requirements regarding independent ownership and operation of the store and avoid statements suggesting that Woof Gang Corporate controls the operations of Marjo van Hoorn's store.

23.     On December 5, 2023, Woofgangbakery.com was flagged by Meta, the parent company for Facebook and Instagram, and accused of being associated with animal cruelty as a result of the customer complaint at the Midtown store and the manner in which Marjo van Hoorn managed the customer complaint.  As a result, all Woof Gang Bakery® stores were unable to post content on their social media pages.  Multiple Woof Gang Bakery® locations from throughout the Woof Gang System reached out to Woof Gang complaining about the damage Marjo van Hoorn was doing to their stores and their inability to use their social media pages for advertising or staying in contact with their customers. Fortunately, Woof Gang was able to convince Meta to lift the ban later that day and allow Woof Gang Bakery® franchisees access to their social media accounts.

24.     On December 11, 2023, Woof Gang's Chief Training and Standards Officer went to the Midtown location with the intent to re-train Marjo van Hoorn and her entire staff during a five-hour session focused primarily on dog safety-related protocols and Woof Gang Bakery® Brand standards.  However, no store management level employees attended the training and Marjo van Hoorn was distracted and disengaged and tried to end the training session early.

25.     On or about December 12, 2023, a different customer left a Google review for Marjo van Hoorn's Midtown location complaining about a bad experience resulting in the customer's dog requiring veterinary care.  This was more evidence that Marjo van Hoorn was not

7

following Woof Gang's safety procedures and standards, Woof Gang Corporate followed up with the customer on December 26, 2023 and learned that Marjo van Hoorn had not contacted the customer and his complaint remained unresolved. This is a direct violation of Woof Gang's® Brand standards that require Marjo van Hoorn to contact dissatisfied customers within 24 hours.

26. Marjo van Hoorn represented in social media posts that the groomer who mistreated the dog resulting in the viral video and was the subject of the complaint at the Midtown location "lost her job." This is not true. Marjo van Hoorn instead transferred the groomer to Defendants' Surfside Woof Gang Bakery® location. In fact, based on Marjo van Hoorn's public statements and the fact that the groomer was not at the mandatory December 11, 2023 training at Midtown, Woof Gang thought the groomer had been fired. Instead, Marjo van Hoorn took the groomer who caused the problems, who didn't go through the required training, and placed her in her Surfside location, resulting in disaster.

27. On December 20, 2023, Marjo van Hoorn and the same groomer from Midtown were involved in an incident at the Surfside location. It involved Marjo van Hoorn and the problem groomer's failure to comply with Woof Gang's safety protocols and procedures emphasized in training less than two weeks earlier and resulted in a customer's dog getting out of the store and being hit and killed by a vehicle. When Woof Gang learned of this incident, its Chief Operating Officer immediately went to the Surfside location to talk to the customer and found Marjo van Hoorn in the alley behind the store smoking with another customer who witnessed the incident instead of being with the customer and dealing with the situation. When the COO asked Marjo van Hoorn which person at the scene was the customer, she replied "the crazy one who wants to shut me down." After the COO began talking to the customer, Marjo van

8

Hoorn re-engaged and denied any wrongdoing and blamed her groomer exclusively while adopting a confrontational tone with the customer.

28.    Woof Gang's COO personally observed multiple infractions of Woof Gang's operating procedures and protocols while at Surfside, including dogs roaming freely around the store (including the groomer's own dog), dogs being in the grooming area without being on the schedule, lack of vaccine information or waivers signed by customers, lack of required security cameras being installed and operational and security gates and the front door being propped open allowing dogs to escape the grooming area and the store.  This demonstrated that even after specific training on these issues less than two weeks earlier, Marjo van Hoorn failed to understand the importance and relevance of implementing and following Woof Gang's safety procedures.

29.    On December 21, 2023, Woof Gang received a communication from a customer who experienced an incident with her dog at Marjo van Hoorn's Midtown location in November 2023 that resulted in the dog requiring treatment from a veterinarian that cost in excess of $1400. The customer submitted the veterinarian bills to Marjo van Hoorn but, after Marjo van Hoorn had promised to reimburse the customer, the customer heard nothing back from her for over three weeks.  In speaking with the customer, Woof Gang learned that Marjo van Hoorn was ignoring the customer and was not following Woof Gang's protocols with respect to dealing with customer complaints.

30.    On December 22, 2023, the same customer whose dog was mistreated at the Midtown location that resulted in the viral video reached out to Woof Gang again and complained because she learned that the groomer that mistreated her dog was not fired, as she demanded, but merely transferred by Marjo van Hoorn to her Surfside location. The customer

implied that it was Woof Gang that made this decision. She demanded immediate action or she would take the issue public again in social media. She also stated that many people had reached out to her since she posted her video with other examples and stories of similar problems at Marjo van Hoorn's Midtown location.

31.     On December 23, 2023, Woof Gang's records show that Marjo van Hoorn's Midtown store had twenty (20) dogs on the schedule in a single day for a single groomer, with up to seven (7) separate dogs booked during the same time slot.  This again showed Marjo van Hoorn's complete disregard for Woof Gang's safety procedures and Brand standards that were repeatedly stressed during the re-training on December 11, 2023 and resulted in the customer incidents described above.

**TERMINATION OF THE SURFSIDE FRANCHISE AGREEMENT**

32.     By letter dated December 24, 2023, Woof Gang gave Marjo van Hoorn and MVHF a Notice of Default and Termination of the Surfside Franchise Agreement for multiple violations of the Franchise Agreement.  Based on those violations, Woof Gang exercised its rights under paragraph 12.5.3 of the Surfside Franchise Agreement to appoint a manager to oversee the operations of the store until such time as Woof Gang determined that Marjo van Hoorn could adequately operate in compliance with the Franchise Agreement and Woof Gang's Operations Manual.  Woof Gang informed Marjo van Hoorn that "Until such time as required cameras are installed and the franchisor's manager is appointed, the store must remain closed." Woof Gang gave Marjo van Hoorn and MVHF 72 hours to attempt to cure the violations of the Surfside Franchise Agreement and the existing damage to Woof Gang and its Marks and customer goodwill, but expressed doubt whether there could be an adequate cure to the violations that had occurred. A true and correct copy of the December 24, 2023 Notice of Default

10

and Termination is attached hereto as Exhibit D.

33.     Marjo van Hoorn failed to cure the defaults identified in the December 24, 2023 letter and, ignoring the requirement that the store remain closed, continued to operate the store as if nothing had happened.

34.     On December 29, 2023, Woof Gang received a text message and picture from the customer whose dog was killed at Marjo van Hoorn's Surfside location on December 20, 2023. The customer was picking up her dog's ashes from the nearby vet's office and drove by the Surfside location.  To her shock and anger, the front door of Marjo van Hoorn's Surfside store was propped wide open.  This condition is exactly what contributed to the death of this customer's dog. To use the customer's own words: "We are picking up Mia's ashes and the store is not only open, but the FUCKING DOOR ITS STILL OPEN, like come on…this must be a fucking joke"  Less than three weeks after Woof Gang required Marjo van Hoorn and her employees to attend training on safety issues, and less than 10 days after the death of a customer's dog under her care at her Surfside store because she didn't follow safety procedures, Marjo van Hoorn continued to display total disregard for following Woof Gang's rules and procedures designed to keep dogs in her care safe. Woof Gang terminated Defendants' Surfside Franchise Agreement by letter dated December 29, 2023.  A true and correct copy of the December 29, 2023 Notice of Termination is attached hereto as Exhibit E.

35.     Defendants must immediately cease operating the Surfside store and comply with all post-termination obligations contained in Article 13 of the Surfside Franchise Agreement.

### TERMINATION OF THE MIDTOWN FRANCHISE AGREEMENT

36.     Paragraph 15.02(xiv) of the Midtown Franchise Agreement contains a cross-default provision that states as follows:

Franchisor may terminate this Agreement upon at least 72 hours' notice and opportunity to cure (or longer if required by law) for occurrence of any one or more of the following events (each of which Franchisee acknowledges is good cause for termination and a material breach of this Agreement)…

(xiv) Any other agreement, including any other Franchise Agreement to which Franchisee is a party, between Franchisee and Franchisor … is terminated for cause.

37. A virtually identical cross default provision is contained in Paragraph 12.2.6 of the Surfside Franchise Agreement.

38. Marjo van Hoorn signed a Personal Guaranty and Assumption Agreement in connection with the Surfside Franchise Agreement in which Marjo van Hoorn agreed that she would "[p]erform each and every undertaking, agreement and covenant stated in the Franchise Agreement… and ***agrees to be personally bound by, and personally liable for the breach of, each and every such undertaking, agreement and covenant, and other provision in the Franchise Agreement***." (Emphasis added.)

39. The Personal Guaranty in the Surfside Franchise Agreement also states that "Guarantor's liability under this guaranty will be direct and independent of the liability of, and will be joint and several with, the franchisee and any other Guarantors of the franchisee."

40. As a Personal Guarantor under the Surfside Franchise Agreement, Marjo van Hoorn in her individual capacity is personally bound by each and every provision in the Surfside Franchise Agreement, including the cross default provisions at Paragraph 12.2.6.

41. By letter delivered at 5:30 p.m. EST on January 5, 2024, Woof Gang gave Marjo van Hoorn Notice of Default and Termination of the Midtown Franchise Agreement on two alternative grounds. The first was under the cross default provisions at Paragraph 15.02(xiv) of the Midtown Franchise Agreement. Because the Surfside Franchise Agreement was terminated on December 29, 2023, the cross default provision in the Surfside Franchise Agreement gave

12

Woof Gang the right to terminate the Midtown Franchise Agreement upon 72 hours' notice, which expired at 5:30 p.m. on January 8, 2024. A true and correct copy of the January 5, 2024 Notice of Default and Termination is attached hereto as Exhibit F.

42.     In addition to and as an alternative to the cross default provision, the January 5, 2024 Notice of Termination also specified that the Midtown Franchise Agreement was being terminated under Paragraph 15.03(i) for Marjo van Hoorn's willful and material breach of the same term of the Midtown Franchise Agreement on three (3) occasions within a 12-month period.  Marjo van Hoorn breached her obligation to comply with the Woof Gang Operations Manual under Article 7.05.01 of the Midtown Franchise Agreement on multiple occasions.  The breaches included social media violations, scheduling guidelines violations and customer care violations.  The January 5, 2024 letter details the factual basis for each violation.

43.     Pursuant to Paragraph 15.02(xiv) of the Midtown Franchise Agreement, a breach of the same term in the Franchise Agreement on three (3) occasions within 12 months gives Woof Gang the right to terminate Marjo van Hoorn's Midtown Franchise Agreement immediately upon receipt of Notice. Notwithstanding, Woof Gang agreed to give Marjo van Hoorn 72 hours' notice, after which she must immediately cease operation of the Midtown store and comply with all post-termination obligations contained in Article 17 of the Midtown Franchise Agreement.

**MARJO VAN HOORN CONTINUES TO OPERATE THE SURFSIDE AND MIDTOWN LOCATIONS USING WOOF GANG® TRADEMARKS AND SYSTEM**

44.     Despite termination of the Midtown and Surfside Franchise Agreements, Defendants continue to hold themselves out as authorized Woof Gang® franchisees and continue to operate their Woof Gang® franchise businesses using Woof Gang's® federally registered Marks at both locations.  On January 9, 2024, Woof Gang's COO visited Defendants' Surfside

13

and Midtown locations. Other than changing the wall paint from pink to light green, the interior of the Surfside store looks very much like it did when the store operated as a Woof Gang location. It continues to use and display Woof Gang® trademarks, sell Woof Gang® branded products and is laid out exactly the same as a Woof Gang franchise location. Attached hereto as Exhibit G are true and correct photographs taken at the Surfside location on January 9, 2024.

45.    Defendants' Surfside location also continues to use the telephone number (305) 397-8744 assigned to them when they operated as Woof Gang, which continues to be listed in online listings associated with the Woof Gang® trademark. They also continue to maintain its Instagram account where they advertise as "Woof Gang Surfside" and displays Woof Gang® trademarks and photos. A true and correct copy of the Surfside Instagram account and telephone listing page as of January 9, 2024 is attached hereto as Exhibit H.

46.    Marjo van Hoorn's Midtown location is unchanged from when it operated as a Woof Gang location. The store continues to display Woof Gang® trademarks, Woof Gang® branded product, Woof Gang signage and Woof Gang trade dress. Marjo van Hoorn was at the store at the time of the COO's visit. Attached hereto as Exhibit I are true and correct photographs taken at the Midtown location on January 9, 2024.

47.    Marjo van Hoorn's Midtown location also continues to use the telephone number (786) 206-1010 assigned to it when it operated as Woof Gang, which continues to be listed in online listings. Marjo Van Hoorn's Midtown location also continues to maintain its Instagram account where it advertises as "Woof Gang Midtown" and displays Woof Gang® trademarks and photos. A true and correct copy of the Midtown Instagram account page and telephone listing as of January 9, 2024 is attached hereto as Exhibit J.

48.    Defendants have failed to comply with her post-termination obligations,

14

including the obligation to refrain from using or displaying Woof Gang's® Marks and from operating as though they are authorized Woof Gang® franchisees at the Surfside and Midtown locations.

49.     Each Franchise Agreement includes a provision that the prevailing party in any action to enforce the Franchise Agreements is entitled to recover its costs, expenses and reasonable attorneys' fees.  (Midtown at ¶ 21.02 and Surfside at ¶ 14.3-14.4) Additionally, Woof Gang is entitled to recover its costs and attorneys' fees pursuant to Fla. Stat. §542.335(1)(k). Woof Gang has hired the undersigned attorneys to enforce the terms of the Midtown and Surfside Franchise Agreements in this action and is entitled to recover all of its costs, expenses and attorneys' fees incurred.

## COUNT I:  FEDERAL TRADEMARK INFRINGEMENT

50.     Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

51.     Woof Gang was granted registration of several trademarks by the United States Commissioner of Patents and Trademarks.  The trademark registration numbers and dates of registration are identified in paragraph 12 above. Several of the Marks are incontestable.

52.     Since registering its trademarks, Woof Gang has extensively advertised its trademarks and trade names in connection with its Woof Gang® franchised businesses.

53.     Defendants' right to use Woof Gang's® registered trademarks and trade names derived solely from the terms of the parties' Franchise Agreements.

54.     The Franchise Agreements do not allow Defendants to use Woof Gang's® Marks after termination of the Franchise Agreements.

55.     Defendants use and display of Woof Gang's® trademarks and trade names in conjunction with their business operations after termination constitutes willful and intentional

infringement of Woof Gang's® trademarks and trade names in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56. As a result of Defendants' infringement, Woof Gang has been damaged by the deprivation of the benefit and goodwill attached to Woof Gang's® trademarks and trade names.

57. Pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §§ 1116 and 1117(a), Woof Gang is entitled to immediate and permanent injunctive relief and damages in the amount of Defendants' gross profits, plus Woof Gang's costs, disbursements and attorneys' fees incurred in this action.

58. Defendants' infringement of Woof Gang's® trademarks and trade names was willful and intentional.

59. Unless injunctive relief is granted, Defendants will continue to infringe Woof Gang's® trademarks and trade names and will cause further irreparable injury to Woof Gang from deprivation of the benefit and goodwill attached to Woof Gang's® trademarks and trade names.

## COUNT II:  UNFAIR COMPETITION (FEDERAL)

60. Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

61. Woof Gang has acquired and established a reputation, demand and goodwill for its products and services under the name "Woof Gang®," which name has special significance in the eyes of the public and represents the highest standards of quality and service.

62. Woof Gang has the exclusive right to use the trademarks associated with "Woof Gang" and to control the goods, services and businesses associated with those trademarks and trade names.

63. Defendants have infringed upon the rights of Woof Gang and its trademarks and

trade names by using Woof Gang's® Marks in connection with services rendered by Defendants and their employees after termination of the Franchise Agreements while Defendants were not authorized to use Woof Gang's® Marks.

64.     Due to Defendants' conduct, customers are likely to be confused and induced into purchasing products and services from Defendants with the belief that those services were or are associated with or approved by Woof Gang.  Customers are likely to be confused as to the source or sponsorship of the products and services sold by Defendants while continuing to use and display Woof Gang's® Marks. Based on Defendants' prior operational deficiencies and failure to follow clear safety standards, the risk to Woof Gang of additional damage to its goodwill and trademarks is exceedingly high.

65.     Defendants' actions constitute Federal Unfair Competition in violation of 15 U.S.C. § 1125(a).

66.     As a direct result of Marjo van Hoorn's actions, as described above, Woof Gang has been damaged and the risk of additional damage if Defendants are not enjoined is extremely high.

67.     Woof Gang is entitled to an immediate and permanent injunction enjoining Defendants from any future use of Woof Gang's® Marks and any other terms or trade dress associated with Woof Gang in connection with their activities.

**COUNT III:  UNFAIR COMPETITION**

68.     Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

69.     Defendants' actions, as set forth herein, constitute unfair competition, in that they have the natural and probable tendency to deceive so as to pass off the business of one person as and for that of another.

70. Defendants' acts of unfair competition include using Woof Gang's® Marks in connection with the advertising and operation of her businesses after termination, which are no longer licensed by or associated with Woof Gang.

71. Woof Gang is entitled to immediate and permanent injunctive relief against Marjo van Hoorn's continued use of Woof Gang's® trademarks and trade names in connection with her non-Woof Gang businesses.

72. Woof Gang is also entitled to recover its costs and disbursements, costs of investigation and attorneys' fees, and to receive other equitable relief, as determined by the Court.

### COUNT IV: MISAPPROPRIATION OF GOODWILL

73. Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

74. Defendants' conduct and actions, as set forth above, constitute unfair competition and misappropriation of Woof Gang's valuable goodwill, reputation and business property.

75. Woof Gang has a long-standing presence in the central and south Florida markets, including many other Woof Gang® retail businesses in the Miami-Dade County Metro area.

76. Because of Woof Gang's long-standing presence in the Florida market, Woof Gang's® trademark and trade name has developed significant goodwill in that market.

77. Pursuant to Paragraph 1.4.1 of the Surfside Franchise Agreement and Paragraph 1.04.05 of the Midtown Franchise Agreement, Defendants acknowledged that any and all goodwill associated with Woof Gang's® proprietary trademarks, the licensed system and licensed program inures exclusively to Woof Gang's benefit.

78. By advertising, soliciting, and selling to Woof Gang customers at Defendants' non-Woof Gang business, Defendants have misappropriated Woof Gang's goodwill and is using

18

that goodwill for her direct benefit and profit.

79.     As a direct result of Defendants' actions, as described in the preceding paragraphs, Woof Gang has been damaged and will continue to be damaged absent immediate injunctive relief.

80.     Woof Gang is entitled to immediate injunctive relief preventing Defendants from misappropriating Woof Gang's goodwill and an accounting of Marjo van Hoorn's earnings and revenues for their unauthorized misappropriation of Woof Gang's goodwill.

### COUNT V:  BREACH OF POST-TERMINATION NONCOMPETE AGREEMENT-SURFSIDE

81.     Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

82.     Paragraph 11.2 of the Surfside Franchise Agreement states as follows:

11.2    Non-Solicitation of Customers. Franchisee covenants that, during the term of this Agreement, and for a period of eighteen (18) months thereafter, Franchisee will not, directly or indirectly divert or attempt to divert any business, account or customer of the Store or any other Woof Gang Bakery® retail store or the System to any "Competing Business" (as defined below).

83.     Paragraph 11.4 of the Surfside Franchise Agreement states as follows:

11.4    Post-Term Covenant Not to Compete. Franchisee (and each Principal Owner and any separate designated Store manager) will not, for a period of twenty-four (24) months after this Agreement expires or is terminated or the date on which Franchisee ceases to operate the Store, whichever is later, directly or as an employee, agent, consultant, partner, officer, director or shareholder of any other person, firm, entity, partnership or corporation: (1) divert or attempt to divert any business or customers of the Store to any Competing Business or perform any act that would damage the goodwill associated with the Marks or the System; (2) own, operate, lease, franchise, conduct, engage in, be connected with, having any interest in, or assist any person or entity engaged in any Competing Business which is located at the former site of the Store; or (3) own, operate, lease, franchise, conduct, engage in, be connected with, having any interest in, or assist any person or entity engaged in any Competing Business that is located within a ten (10) mile radius of the former site of the Store or any other then-existing Woof Gang Bakery®

19

retail store; provided, however, that this Section 12.4 will not apply to: (i) other Woof Gang Bakery® retail stores that Franchisee operates under separate Woof Gang Bakery® franchise agreements; or (ii) the ownership of securities listed on a stock exchange or traded on the over-the-counter market that represent one percent (1%) or less of that class of securities.

84. Paragraph 11.5 of the Franchise Agreement defines "Competing Business:

11.5 <u>Competing Business</u>. "Competing Business" means any retail (including e-commerce) business that offers or sells pet food, dog treats, pet accessories, pet grooming services and/or pet day care or boarding services and such goods and services represent ten percent (10%) or more of the total gross revenues of such retail business in any calendar month.

85. Defendants agreed in Paragraph 11.6 of the Surfside Franchise Agreement that damages alone cannot adequately compensate Woof Gang if they violate any covenant not to compete and that injunctive relief is essential for Woof Gang's protection.

86. Defendants have breached Paragraph 11.4 of the Surfside Franchise Agreement by continuing to own, maintain, and have an interest in a business that sells Competing Products and services from the same location assigned to Defendants under the terms of the Surfside Franchise Agreement. On at least one recent occasion, someone answered the phone at the Surfside location as "Surfside Grooming."

87. Woof Gang has a legitimate business interest in its valuable confidential business information, its trade secrets, its established Business System, its relationship with existing Woof Gang customers, and the goodwill associated with Woof Gang's® trademarks and trade names in the South Florida market, as well as the specialized training and products provided to Marjo van Hoorn as part of Woof Gang's confidential Business System.

88. As a result of Defendants' operation of a directly-competitive business in the same location licensed to Defendants in their Surfside Franchise Agreement, Woof Gang has suffered irreparable harm and will continue to suffer irreparable harm as a result of Defendants'

continued breach of the post-termination noncompete provisions of the Surfside Franchise Agreement.

89.     Woof Gang has no adequate remedy at law to protect its substantial business and property rights, and the damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

90.     Defendants' activities in operating a directly-competitive business in the same location as her former Woof Gang business is causing irreparable harm and damage to Woof Gang and its other franchisees in the Miami Dade County Metro area and elsewhere.

91.     The scope and duration of the noncompete provision in the Woof Gang Franchise Agreement is presumptively valid under Fla. Stat. §542.335(1)(c) and (d) and reasonably necessary to protect Woof Gang's legitimate business interests.

92.     Woof Gang is entitled to immediate and permanent injunctive relief enforcing the post-termination noncompete provisions of the Surfside Franchise Agreement.

**COUNT VI:  BREACH OF POST-TERMINATION<br>NONCOMPETE AGREEMENT-MIDTOWN**

93.     Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

94.     Paragraph 16.02 of the Midtown Franchise Agreement states:

16.02 Competing Business Activities after Term

16.02.01  Franchisee covenants and agrees that, for a period of twenty-four (24) months following the effective date of any termination, expiration or non-renewal ("the Termination Date"), Franchisee will not, individually or together with another, directly or indirectly, on its own behalf or on behalf of or through any other person, sole proprietorship, or Entity, do any of the following:

a.      Compete with Franchisor or any franchisee of Franchisor within the boundary of Franchisee's designated Territory, as it existed immediately before the Termination Date, in the operation of any business offering dog treats, pet food, pet accessories, pet grooming services and

21

pet day care/day boarding or any aspect of such Licensed Business as it exists on the Termination Date, or any business substantially similar thereto or tending to compete for the same customers as Franchisor or its Franchisees ("Prohibited Activities");

b.        Solicit, take away, or divert, and/or influence or attempt to influence any customers, franchisees, vendors, clients, and/or patrons of Franchisor or of any franchisee of Franchisor, which customers, franchisees, vendors, clients, and/or patrons were served by Franchisor or a franchisee of Franchisor at any time during the four (4) years preceding the Termination Date, to transfer or divert their business or patronage from Franchisor or Franchisor's franchisee(s) to any other person or Entity engaged in the Prohibited Activities or anything similar to the Licensed Business;

95.     Paragraph 16.02.09 of the Midtown Franchise Agreement states:

16.02.09 Franchisee agrees that any violation of the covenants contained in this Article will cause irreparable harm to Franchisor and its other franchisees and may, as a matter of course, be restrained by process issued out of a court of competent jurisdiction, in addition to any other remedies provided by law. In the event of any action for a temporary or permanent injunction to enforce this Covenant, Franchisee hereby waives any requirement of a bond to the extent that any bond would exceed one hundred dollars. The substantially prevailing party in any such enforcement action shall be entitled to recover their attorney's fees and costs incurred therein in addition to any and all other remedies.

96.     Marjo van Hoorn has breached Paragraph 16.02 of the Midtown Franchise Agreement by continuing to own, maintain, and have an interest in a business that sells Competing Products and services from the same location assigned to her under the terms of the Midtown Franchise Agreement.

97.     Woof Gang has a legitimate business interest in its valuable confidential business information, its trade secrets, its established Business System, its relationship with existing Woof Gang customers, and the goodwill associated with Woof Gang's® trademarks and trade names in the South Florida market, as well as the specialized training and products provided to Marjo van Hoorn as part of Woof Gang's confidential Business System.

98.     As a result of Marjo van Hoorn's operation of a directly-competitive business in the same location licensed to her in the Midtown Franchise Agreement, Woof Gang has suffered irreparable harm and will continue to suffer irreparable harm as a result of Marjo van Hoorn's continued breach of the post-termination noncompete provisions of the Midtown Franchise Agreement.

99.     Woof Gang has no adequate remedy at law to protect its substantial business and property rights, and the damages from Marjo van Hoorn's activities are considerable and continuing and thus not capable of ascertainment at this time.

100.    Marjo van Hoorn's activities in operating a directly-competitive business in the same location as her former Woof Gang Midtown business is causing irreparable harm and damage to Woof Gang and its other franchisees in the Miami Dade County Metro area and elsewhere.

101.    The scope and duration of the noncompete provision in the Woof Gang Midtown Franchise Agreement is presumptively valid under Fla. Stat. 542.335(1)(c) and (d) and reasonably necessary to protect Woof Gang's legitimate business interests.

102.    Woof Gang is entitled to immediate and permanent injunctive relief enforcing the post-termination noncompete provisions of the Surfside Franchise Agreement.

### COUNT VII:  BREACH OF CONTRACT— POST-TERMINATION OBLIGATIONS

103.    Woof Gang hereby incorporates herein paragraphs 1 through 49 of the Complaint.

104.    Defendants' Surfside and Midtown Franchise Agreements have similar post-termination obligations, but are expressed in different language in each Agreement. Paragraph 13 of the Surfside Franchise Agreement states:

13.1    <u>Post-Term Duties</u>. If this Agreement expires or is terminated for any

reason other than a termination as a result of a breach by Franchisor, Franchisee will:

13.1.1 within ten (10) days after termination, pay all amounts due and owing to Franchisor or its affiliates, including all Royalty Fees, National Marketing Fees, and accrued interest due under this Agreement;

13.1.2 discontinue using, and return to Franchisor by first class prepaid United States mail any hard copies of, the Manual and any other manuals, advertising materials, and all other printed materials relating to the operation of the Licensed Business;

13.1.3 assign to Franchisor or, at Franchisor's discretion, disconnect the telephone number for the Store. Franchisee acknowledges that Franchisor has the sole right to and interest in all telephone numbers and all electronic or other directory listings associated with the Marks, and Franchisee authorizes Franchisor, and appoints Franchisor as its attorney-in-fact, to direct the telephone company and all listing agencies to transfer such numbers and listings to Franchisor;

13.1.4 remove from the Store premises all signs, posters, fixtures, decals, wall coverings and other materials that are distinctive of a Store or bear the name "Woof Gang Bakery" or other Marks;

13.1.5 comply with all post-termination obligations under any software license or access agreement, including the return of all materials relating to all proprietary software;

13.1.6 take all necessary action to cancel all fictitious or assumed name or equivalent registrations relating to Franchisee's use of any of the Marks;

13.1.7 immediately cease using the Trade Secrets in whatever format they may appear and return to Franchisor (or, at Franchisor's option, destroy or electronically delete) all electronic or hard-copy documents in Franchisee's possession that contain Trade Secrets;

13.1.8 within ten (10) days after termination, pay Franchisor all future lost Royalty Fees and National Marketing Fees if this Agreement is terminated due to Franchisee's breach of this Agreement; and

13.1.9 comply with all other applicable provisions of this Agreement, including the non-compete and non-solicitation provisions.

Upon termination of this Franchise Agreement for any reason, Franchisee's right to use the name "Woof Gang Bakery" and the other Marks and the System will immediately terminate and Franchisee (and the Principal Owners) will not in any way associate itself/themselves as being associated with Franchisor. If Franchisee fails to remove all signs and other materials bearing the Marks, Franchisor may do so at Franchisee's expense.

105.   Paragraph 17.1 of the Midtown Franchise Agreement states:

After the Termination Date, Franchisee shall have no further rights to use, in any manner, the System, the Marks, anything similar to the Marks, the telephone numbers, the telephone listings, any proprietary computer software, any trade secrets or the Manual. Franchisee shall immediately notify such persons as Franchisor shall reasonably require of Franchisee's loss of rights thereto. All sums of money due from the Franchisee to Franchisor or to any other Woof Gang Bakery franchisee as of the Termination Date shall become immediately due and payable. As between the parties hereto, whether or not a Lease Conditional Assignment Agreement has been signed, Franchisor or Franchisor's designee shall have the option, exercisable within sixty (60) days, to assume the lease for the Premises. If Franchisor elects to assume the lease for the Premises, pursuant to the Lease Conditional Assignment Agreement or otherwise, Franchisee agrees to cooperate in the transfer, to execute any documents which may be required for Franchisor or Franchisor's designee to assume the lease, and to otherwise take no actions which would interfere with the ability of Franchisor or its designee to assume the said lease. Franchisee specifically agrees to execute such document(s) as may be necessary to transfer the telephone numbers to Franchisor or Franchisor's designee. In the event Franchisee or any owner or affiliate of Franchisee owns the Premises, Franchisee agrees that Franchisor shall have the option to lease the Premises at fair market value for a term of up to ten (10) years, at Franchisor's election, such option exercisable by Franchisor within sixty (60) days following the Termination Date.

106.   Paragraph 17.02 of the Midtown Franchise Agreement states:

After the Termination Date, Franchisee shall immediately refrain from holding itself out to the public in any way as a Franchisee or affiliate of Franchisor or as a former Franchisee or affiliate of Franchisor. If directed by Franchisor, Franchisee shall, at Franchisee's sole cost and expense, make or cause to be made such changes in signs, telephone numbers, buildings or structures as Franchisor may direct to distinguish the Premises from its former appearance and from other Woof Gang Bakery franchisees. If Franchisee fails to make such changes within ten (10) calendar days, then Franchisor shall have the right to enter upon the Premises, without liability for trespass or otherwise, and to make or cause

to be made such changes at the expense of Franchisee, which expenses shall be paid by Franchisee upon demand. Franchisee shall immediately file the appropriate forms to abandon or withdraw any assumed name certificate or to change the name of its corporation or partnership to eliminate any reference to the System or the Marks. If Franchisee fails or refuses to cooperate with Franchisor, Franchisee hereby appoints Franchisor as its Attorney in Fact to complete the changeover. Franchisee shall immediately return to Franchisor the Manual, Trade Secrets, bulletins, instruction sheets, software, forms, Marks, designs, signs, printed matter and other material containing any part of the System or the Marks together with all copies thereof (including electronic or digital copies) that are or have been within Franchisee's custody or control.

107. Defendants have failed to comply with the post-termination obligations set forth in the Surfside and Midtown Franchise Agreements, resulting in irreparable harm and damage to Woof Gang and impairment of the goodwill associated with Woof Gang®'s names and trademarks.

108. The post-termination obligations set forth in the Franchise Agreements are reasonably necessary to protect Woof Gang's legitimate business interests.

109. Woof Gang has no adequate remedy at law to protect its substantial business and property rights and the damages from Defendants' failure to comply with post-termination obligations are considerable and continuing and thus not capable of ascertainment at this time.

110. Woof Gang is entitled to immediate and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreements.

## PRAYER FOR RELIEF

**WHEREFORE**, Woof Gang prays for judgment against Marjo van Hoorn and MVHF, jointly and severally, as follows:

1. For an immediate Temporary Restraining Order and/or for Preliminary Injunction and Permanent Injunction preventing Defendants, their directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with them from using,

26

displaying, being associated with or claiming any current or past affiliation with any of the trademarks, tradenames, logos of trade dress associated with "Woof Gang®";

2.     For an immediate Temporary Restraining Order and/or for Preliminary Injunction and Permanent Injunction preventing Marjo van Hoorn, her directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with her from failing to comply with all post-termination obligations in the Franchise Agreements, including all post-termination noncompete obligations in the Surfside and Midtown Franchise Agreements;

3.     For Woof Gang's costs, disbursements, costs of investigation and attorneys' fees incurred in this action pursuant to the terms of the Surfside and Midtown Franchise Agreements and Fla. Stat. § 542.335(1)(k); and

4.     For such other and further relief as the Court deems just and appropriate.

## VERIFICATION

STATE OF FLORIDA            )
                           )
COUNTY OF MIAMI-DADE       )

I, Tim Brueggemann, am the Chief Operating Officer of Woof Gang Bakery, Inc., and I certify on personal knowledge and review of Woof Gang Bakery's business records that the allegations made in this Verified Complaint are true to the best of my knowledge, information, and belief.  I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 10th of January 2024.

_____
Tim Brueggemann

29

Dated:  January 10, 2024

Respectfully submitted,

**VENABLE LLP**
100 SE Second Street
Miami Tower, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2333
Facsimile: (305) 349-2310


By:   s/Michael D. Joblove_____
      Michael D. Joblove
      Fla. Bar No. 354147
      mdljoblove@venable.com

      and

**LATHROP GPM LLP**
Michael R. Gray, (Pro Hac papers forthcoming)
Minnesota ID No. 175602
3100 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 632-3078
(612) 632-4078 – facsimile
michael.gray@lathropgpm.com

*ATTORNEYS FOR PLAINTIFF*

63023787v3

29